## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| DARLING'S, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14-cv-00208-NT |
| | ) | |
| CHRYSLER GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| CHRYSLER GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14-cv-00136-NT |
| | ) | |
| DARLING'S, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DARLING'S MOTION TO STAY AND MOTION TO REMAND

Before the Court are Darling's motion to remand *Darling's v. Chrysler Group, LLC*, 1:14-cv-00208-NT ("**Case 208**") and Darling's motion to stay *Chrysler Group, LLC v. Darling's*, 1:14-cv-00136-NT ("**Case 136**"). For the reasons stated below, both motions are **GRANTED**.

## BACKGROUND

Darling's, the plaintiff in Case 208 and the defendant in Case 136, is a Maine corporation that operates car dealerships in Augusta and Ellsworth. Chrysler Group, LLC ("**Chrysler**"), the defendant in Case 208 and the plaintiff in Case 136, is a Delaware limited liability corporation with its principal place of business in Michigan

which manufactures and distributes automobiles. Under a franchise relationship with Chrysler, Darling's provides free warranty service to qualified owners of Chrysler cars and then submits labor invoices to Chrysler for compensation.

In Maine, car warranty service arrangements like this are regulated by the Business Practices Between Motor Vehicle Manufacturers, Distributors and Dealers Act (the "**Dealers Act**"), 10 M.R.S. §§ 1171 to 1190-A. This dispute primarily implicates three provisions of the Dealers Act. First, 10 M.R.S. § 1176 requires a franchisor (like Chrysler) to reimburse a franchisee (like Darling's) "at the retail rate customarily charged by that franchisee for the same labor when not performed in satisfaction of a warranty," as long as the franchisee's retail rate is "routinely posted in a place conspicuous to its service customer[s]." Second, 10 M.R.S. § 1187 establishes the Maine Motor Vehicle Franchise Board (the "**Maine Franchise Board**" or the "**Board**"), a body made up of seven voting members appointed by Maine's governor and Secretary of State and empowered to hear complaints regarding conduct governed by the Dealers Act. *See* 10 M.R.S. § 1188. Third, 10 M.R.S. § 1190-A provides that an action in a "court of competent jurisdiction" must be stayed if the action "gives rise or could give rise to a claim or defense" under the Dealers Act and "a party to the action" files a timely complaint with the Maine Franchise Board.

Chrysler claims that § 1176 of the Dealers Act and various sales and service agreements entitle it to certain information from Darling's to verify both the retail labor rate Darling's says it "customarily charge[s]" and the details of individual

repairs Darling's claims it has performed. Darling's disagrees and alleges that Chrysler has been improperly withholding portions of the warranty labor payments it owes since November of 2013.

Chrysler kicked off this litigation in March of 2014, when it filed a complaint before this Court (Case 136) asserting diversity jurisdiction under 28 U.S.C. § 1332 and seeking a declaration of Chrysler's rights under § 1176 of the Dealers Act and its sales and service agreements with Darling's. Darling's responded by filing a complaint with the Maine Franchise Board (Case 208) regarding the same dispute seeking civil penalties. Next, Chrysler filed an opposition to Darling's motion to stay and a notice purporting to remove Case 208 to this Court under 28 U.S.C. § 1441(a), which allows a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Finally, Darling's moved to remand Case 208 to the Maine Franchise Board, arguing that removal is improper because the Board is not a "State court." *See* 28 U.S.C. § 1441(a). Chrysler opposed the motion for remand.

After reviewing the issues involved in the pending motions in both cases, the Court requested further argument from the parties to determine whether the Board is a "State court" for removal purposes. Each party submitted supplemental briefing on the issues raised by the Court.

**DISCUSSION OF MOTION FOR REMAND IN CASE 208**

## I.     The Governing Law

The issue before the Court deals primarily with the reach of the federal removal statute, 28 U.S.C. § 1441(a). However, because the relevant analysis requires the Court to consider the nature of federal district courts' subject-matter jurisdiction more broadly, the Court also describes the jurisdictional landscape in which the removal statute sits.

Article III of the United States Constitution allows Congress to authorize lower courts to hear a number of categories of cases and controversies, including "Controversies . . . between Citizens of different States" rooted in state law, known as "diversity" cases, and "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority," known as federal question cases. U.S. Const. art. III, § 2, cl. 1.

Congress conferred original jurisdiction on federal trial courts to hear diversity cases in 1789. Judiciary Act of 1789, § 11, 1 Stat. 73, 78; *see generally* Erwin Chemerinsky, *Federal Jurisdiction* §§ 1.2, 5.3.2 (6th ed. 2012). As amended and codified at 28 U.S.C. § 1332, the diversity jurisdiction statute provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." Congress conferred original jurisdiction on federal trial courts to hear federal question cases in 1875. Act of Mar. 3, 1875, ch. 137, § 1, 18 Stat. 470, 470; *see generally* Erwin Chemerinsky, *Federal Jurisdiction* §§ 1.2, 5.2 (6th ed. 2012). As amended and codified at 28 U.S.C. § 1331, the federal question jurisdiction statute

provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Original jurisdiction is augmented by a legal concept known as supplemental jurisdiction. *See* 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Osborn v. Bank of the U.S.*, 22 U.S. 738, 823 (1824). Supplemental jurisdiction arises from an interpretation of Article III which allows federal district courts to hear claims that would not satisfy the prerequisites for jurisdiction on their own, but are factually intertwined with claims that do. As Professor Chemerinsky explains,

> The constitutional basis for such jurisdiction stems from Article III's authorization for federal courts to decide "cases" and "controversies." A case or controversy is said to refer to a single set of facts. A case or controversy includes all claims arising from a set of facts, and thus a federal court may decide the entire matter, even though only part of it meets the requirements for federal court jurisdiction.

Erwin Chemerinsky, *Federal Jurisdiction* § 5.4 (6th ed. 2012).

Though supplemental jurisdiction was originally a creature of case law, *see Osborn*, 22 U.S. at 823, Congress enshrined it in statute in 1990. Judicial Improvements Act of 1990, Pub. L. 101-650, § 310, 104 Stat. 5089, 5113-14. Subject to certain exceptions,[1] the supplemental jurisdiction statute, codified at 28 U.S.C. § 1367, provides that a federal district court with "original jurisdiction" over a "civil action" has "supplemental jurisdiction over all other claims that are so related to

---

[1]    One exception is aimed at preventing parties in diversity suits from using supplemental jurisdiction to evade the rule of complete diversity. 28 U.S.C. 1367(b). Another allows district courts discretion to refrain from asserting supplemental jurisdiction if certain conditions are met, such as if "the claim raises a novel or complex issue of State law," 28 U.S.C. § 1367(c)(1), or if there are "exceptional circumstances" and "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Because plaintiffs choose where to bring suits in the first instance, these jurisdictional statutes provide only plaintiffs a pathway to federal district court. Their benefits are extended to defendants through removal jurisdiction. The general removal jurisdiction statute, 28 U.S.C. § 1441(a), allows a "defendant"[2] to remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Courts interpret 28 U.S.C. § 1441(a) to allow defendants to remove only "state-court actions that originally could have been filed in federal court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Whether a state tribunal is acting as a "State court" in a particular case is decided as a matter of federal law, based on statutory interpretation of the removal statute, not as a matter of state statutory labels. *Volkswagen de P.R. v. P.R. Labor Relations Bd.*, 454 F.2d 38, 44 (1st Cir. 1972). A two-pronged functional test guides this analysis. *See Volkswagen de P.R.*, 454 F.2d at 44.[3] Under the first prong of the

---

[2]     Which party is considered the "defendant" under 28 U.S.C. § 1441(a) is determined according to federal law, as a matter of interpretation of the removal statute, rather than state law. *Chicago, Rock Island & Pac. R.R. Co. v. Stude*, 346 U.S. 574, 580 (1954). As the Supreme Court explained in *Mason City & Fort Dodge R.R. Co. v. Boynton*, 204 U.S. 570 (1907), the removal statute's use of the word defendant "is directed toward more important matters than the burden of proof or the right to open and close." *Id.* at 579. It depends instead on fundamental factors such as which party initiated legal action and which party's "will" is driving the litigation. *Id.* at 579-80.

[3]     The *Volkwsagen* opinion identifies three factors, but later opinions collapse the first two factors into a single prong. *See Floeter v. C.W. Transp., Inc.*, 597 F.2d 1100, 1102 (7th Cir. 1979). The difference is cosmetic, not substantive.

test, the court analyzes the tribunal's "functions, powers, and procedures," *Floeter*, 597 at 1102, and the "locus of traditional jurisdiction" over the subject matter at issue. *Volkswagen de P.R.*, 454 F.2d at 4. Under the second prong of the test, the court analyzes "the respective state and federal interests" in the subject matter of the case and in the forum where the case is heard. *Id.* The balance of interests changes depending on the subject matter of the dispute at issue, so a single tribunal may constitute a "State court" when it hears certain kinds of cases, but not others. *See Volkswagen de P.R.*, 454 F.2d at 4; *Floeter*, 597 F.2d at 1102.

Where a district court is called on to decide whether a state court action may be removed, "the defendant has the burden of establishing that the requirements of the relevant federal statutes have been met and that removal is proper." 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3721 (4th ed. 2014); *see also Finley v. George Weston Bakeries Distrib., Inc.*, 473 F. Supp. 2d 105, 106 (D. Me. 2007). The court must "strictly construe" any removal statute. *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999).

## II.    Applying the Governing Law to the Facts of the Case

For purposes of the motion to remand before the Court in Case 208, Darling's does not dispute that the parties are "citizens of different states," that "the matter in controversy" exceeds $75,000, or that Chrysler is properly characterized as the "defendant" in the case. Instead, Darling's argues that removal should not be permitted because the Maine Franchise Board is not a "State court" under 28 U.S.C. § 1441(a) and *Volkswagen de Puerto Rico*. Below, the Court first describes the Maine

Franchise Board and then applies the functional test prescribed by *Volkswagen de Puerto Rico.*

### A.    The Maine Franchise Board

The Maine Franchise Board is made up of seven voting members. 10 M.R.S. § 1187(1)-(2). Of these, the Dealers Act provides that three must be dealer-franchisees, two must be members of the public, one must be a franchisor employee or representative, and one, the chair, must be an attorney. *Id.* The chair is appointed by Maine's Secretary of State; the rest of the Board's regular members are appointed by Maine's Governor. *Id.*

The Maine Franchise Board's mission is to "review written complaints filed . . . by persons complaining of conduct governed by the [the Dealers Act]" and to "issue written decisions and . . . orders" regarding those complaints. 10 M.R.S. § 1188. In carrying out this mission, the Board has the power to levy modest civil penalties (which are paid to a state highway fund) and to award costs and attorney's fees (which are paid to the opposing party), but it lacks the power to award monetary damages or grant injunctive or declaratory relief. 10 M.R.S. §§ 1171-B(3), 1188(3), 1188(5); *Ford Motor Co. v. Darling's*, 86 A.3d 35, 49-51 (Me. 2014) (Board lacks power to award damages); *Darling's v. Chrysler, LLC*, M.V. Bd. No. 13-01, at 8 (Me. Motor Vehicle Franchise Bd. Apr. 4, 2014) (Board lacks power to grant injunctive relief). The Board also lacks jurisdiction to reach any findings of fact or conclusions of law beyond those necessary for its civil penalty decisions. *See Ford Motor Co.*, 86 A.3d at 49-51.

The Board's rules create a process similar to that used in civil litigation, providing for notice, pleadings, discovery, motions, offerings of evidence (including

some hearsay), witness examinations, rulings on objections, and written opinions. *See generally* 10 M.R.S. §§ 1187(6), 1188(6); 29-250 C.M.R. ch. 14 (2005). The rules give the Board the power to compel the attendance of witnesses and subpoena records under pain of contempt. 10 M.R.S. §§ 1187(6), 1188(6); 29-250 C.M.R. ch. 14, § 5(2)-(3) (2005).

Another key aspect of the Maine Franchise Board is its relationship with Maine's judiciary. First, Maine's courts maintain parallel jurisdiction over legal actions involving the Dealers Act. For instance, a franchisee may refrain from filing a Board complaint and instead bring an original action for damages or injunctive relief in state court. 10 M.R.S. § 1173. The claim will proceed there unless the adverse party exercises its right to file a separate complaint with the Maine Franchise Board and temporarily stay the state court action. 10 M.R.S. §§ 1173, 1190-A.

Second, the Dealers Act allows parties to challenge the Board's legal and factual determinations in Maine's Superior Court. The operative review provision, 10 M.R.S. § 1189-B, creates a unique process distinct from both a typical administrative appeal, where an appellate judge or panel reviews a cold record on a deferential standard of review without taking additional evidence, *cf.* 5 M.R.S. §§ 11006, 11007, and a trial *de novo*, where a fact finder hears a dispute without any reference to earlier proceedings. *Cf. Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 355 (1961). Instead, the challenging party has a right to a trial by jury,[4] but the Board's decision

---

[4] There is no right to a trial by jury where the challenging party alleges only errors of law. 10 M.R.S. § 1189-B(1).

is entered into evidence and its findings of fact are "presumed to be correct unless rebutted by clear and convincing evidence."[5] 10 M.R.S. § 1189-B(2). The non-prevailing party can challenge the Board's decision with new evidence, including evidence about the Board's composition and how it reached its decision, *see Ford Motor Co.,* 86 A.3d at 48, and the presumption of correctness does not apply to legal issues or to factual determinations on issues outside the Board's jurisdiction, such as whether to award damages, injunctive relief, or declaratory relief. *Id.* at 51. Such issues can be raised before the Superior Court at the same time it hears a Board appeal; they are adjudicated on the "traditional burden of proof by a preponderance of the evidence" standard. *Id.* at 50-51; *see also* 10 M.R.S. § 1189-B(2).

## B. Whether the Maine Franchise Board is a "State court" under the *Volkswagen de Puerto Rico* Functional Test

### 1. First Prong: Functions, Powers, Procedures, and Traditional Locus of Jurisdiction

The Maine Franchise Board's only function is to decide disputes between two parties; like a court, it has no substantive rulemaking or licensing authority. On the other hand, most of the Board's members are experts in auto sales and manufacturing, not law. Part of the Board's function is to allow its members to bring

---

[5] Though it is difficult to compare an evidentiary standard to an appellate review standard, it appears that it is easier to challenge a factual finding under the "clear and convincing evidence" standard than the "clear error" standard of review, which Maine's appellate courts use to review factual findings reached by trial courts. *Compare State v. Thomas*, 8 A.3d 638, 643 (Me. 2010) (defining the "clear error" standard of review) *with Dubois v. Madison Paper Co.*, 795 A.2d 696, 699 (Me. 2002) (defining "clear and convincing evidence"). To rebut a finding under "clear error" review, a challenger must demonstrate that there is *no* competent evidence in the record to support the finding. *See Thomas*, 8 A.3d at 643. To rebut a finding under the "clear and convincing evidence" standard, a challenger would merely have to show that it is "highly probable" that the finding is incorrect, a standard that could be met even if there was some competent evidence in the record that supported the finding. *See Dubois*, 795 A.2d at 699.

their non-legal, real-world experience to bear, much like members of a specialized administrative agency.

As for the Board's powers, it has court-like authority to issue subpoenas and compel individuals to testify. However, the Board lacks the panoply of powers available to state court judges. It is limited to levying civil penalties payable to the state highway fund and awarding costs and attorney's fees. It lacks jurisdiction to reach any findings of fact or conclusions of law beyond those upon which its civil penalty decisions depend. It lacks the power to award monetary damages or grant injunctive or declaratory relief.

Procedurally, the Board's cases are governed by rules similar to the Maine Rules of Civil Procedure and its judgments are embodied in written decisions, just as a court's would be. But other aspects of the Board's procedures are less court-like. The Board can base its decisions on hearsay, at least in part. Appeals of its factual findings are taken to a jury, not an appellate judge or panel. The Board's factual findings can be attacked collaterally with new evidence and can be overturned more easily than those of a jury or trial judge. Finally, a party to a complaint before the Board can only begin pursuing the typical trophies of litigation—damages and injunctive and declaratory relief—after the Board issues its decision.

With respect to the traditional locus of jurisdiction, suits regarding disputes about franchise relationships were traditionally brought in state court. However, when the Legislature passed the Dealers Act, it placed a substantial portion of the franchisor-franchisee relationship outside the common law and instead within a

scheme of rights created by statute, an area where administrative agencies have traditionally shared jurisdiction with courts. *See Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 83 (1982).

The parties cite numerous cases where courts relied on one or another of these factors to support a finding that a particular tribunal was or was not a "State court,"[6] but none offer a comprehensive blueprint for the weight each factor should be given. In this case, the first prong factors are essentially in equipoise.

### 2. Second Prong: The Balance of State and Federal Interests

### a. The State's Interest in the Subject Matter and Forum

Maine's interest in the subject matter of the case is relatively clear. The issue in dispute is how a Maine statute applies to a Maine corporation servicing Maine consumers. The State has a strong interest in the application of its own laws to events that occur within its borders. *See* 10 M.R.S. § 1182 (public policy provision of the Dealers Act).

Regarding Maine's interest in the forum, the legislative history of the Dealers Act is informative. The summary of the amendment that established the Maine Franchise Board provides as follows:

> Motor vehicle dealers and manufacturers engage in complex and time-consuming litigation before the courts of the State and in hearings

---

[6] *See, e.g., Volkswagen de P.R.,* 454 F.2d at 44 *(*tribunal more like a "State court" if it hears cases between two private parties and lacks rulemaking authority); *Lou Bachrodt Chevrolet Co. v. Gen. Motors LLC,* No. 12 C 7998, 2013 WL 3754833, at *4 (N.D. Ill. July 15, 2013) (tribunal more like a "State court" if it uses procedures similar to those in a judicial court and has the power to compel testimony and award fees and costs). *But see, e.g., Rockville Harley-Davidson v. Harley-Davidson Motor Co.,* 217 F. Supp. 2d 673, 677 (D. Md. 2002) (tribunal less like a "State court" if it lacks the ability to award money damages and grant injunctive relief); *Bellsouth Telecomm. v. Vartec Telecom, Inc.,* 185 F. Supp. 2d 1280, 1284 (N.D. Fla. 2002) (tribunal less like a "State court" if it is composed of lay experts rather than law-trained judges or attorneys).

before the Secretary of State. . . . This bill provides a forum for the prompt resolution of such complaints by a board with specific expertise in the motor vehicle industry . . . .

L.D. 1294, Summary (121st Legis. 2003). Viewed in light of the Board's unique statutory background, the legislative history reveals a judgment that complex disputes which unfold within a specific type of business relationship would be resolved more fairly and efficiently if either party had the option, unilaterally, to have the facts judged in the first instance not by law-trained judges or hearing officers, but by businesspeople experienced in that area and members of the public who focus on only one type of dispute. The risk that members of the Board might favor a particular interest group, such as Maine's car dealers, is balanced by the Act's atypical review provision, which requires the Board's decision be entered into evidence but allows for a jury trial and additional evidence, including evidence about the Board's make-up and decision-making process. This policy judgment, made by Maine's elected representatives, constitutes a formidable state interest. Because this case involves only state substantive law, it is distinguishable from cases where the dispute involves federal law or a substantial federal question.[7]

---

[7] *Cf. Volkswagen de P.R.*, 454 F.2d at 4 (removal from the Puerto Rico Labor Relations Board warranted where federal interest stronger than state interest because case governed exclusively by federal common law); *Spellman v. United Parcel Serv.*, 540 F. Supp. 2d 237, 241 n.10 (D. Me. 2008) (removal from Maine Workers' Compensation Board warranted where federal interest stronger than state interest because state cause of action pursued by plaintiffs completely preempted by federal law); *Ins. Comm'r of P.R. v. Doral Ins. Agency, Inc.*, Civil 05-2230CCC, 2006 WL 3196472, at *3-6 (removal from Puerto Rico's Office of the Insurance Commissioner warranted where federal interest stronger than state interest because federal law preempted state regulations at issue).

### b. The Federal Interest in the Subject Matter and Forum

### i. The Federal Interest in Out-of-State Litigants' Right to a Neutral Federal Forum

As to the federal interests at play, an out-of-state defendant's right to a neutral federal forum lies at the heart of diversity jurisdiction. Chrysler contends this interest is salient here because if the Court fails to take Case 208 *now*, existing precedent would effectively prohibit litigation of this case in federal court at any point in the future. The issue is complicated, but, despite multiple rounds of briefing, Chrysler has failed to persuade the Court that its position on this point is correct.[8]

Before addressing Chrysler's arguments, the Court pauses to describe the holding and reasoning of *City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997), a key case in this area. There, the International College of Surgeons ("**ICS**") owned two mansions on the shore of Lake Michigan in Chicago. After the Chicago Landmarks Commission determined that ICS's properties qualified for designation under the city's Landmarks Ordinance, ICS applied to the Commission for a permit to demolish the two mansions and construct a high rise. The Commission twice denied ICS's application. ICS then filed suit in state court under the Illinois Administrative Review Law (the "**IARL**"), claiming that the Commission had applied the Landmark Ordinance incorrectly and that the Ordinance violated the Constitution, both facially and as-applied.[9]

---

[8]     Darling's appears to agree with Chrysler that the structure of the Dealers Act would prevent this Court from hearing a claim for civil penalties first brought to the Board.

[9]     Under the IARL cause of action through which ICS brought its claims, state court review of agency action is bound to the administrative record and the "findings and conclusions of the

The City of Chicago petitioned to remove the case to federal court. The district court assumed jurisdiction over ICS's constitutional claims under the federal question statute and assumed jurisdiction over ICS's claim that the Commission had failed to apply the Landmark Ordinance correctly under the supplemental jurisdiction statute. Ultimately, the district court granted summary judgment in favor of the City.

On appeal, the Seventh Circuit reversed, concluding that the district court lacked jurisdiction to hear the case. The appeals court held that, under *Chicago, Rock Island & Pacific Railroad Co. v. Stude*, 346 U.S. 574 (1953), *Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348 (1961) and other lower court, the question of whether a suit challenging a decision by a state administrative tribunal may be brought in the district court depends "upon the nature of the review conducted by the state court." *Int'l Coll. of Surgeons v. City of Chicago*, 91 F.3d 981, 990 (7th Cir. 1996), *rev'd* 522 U.S. 156. Because the IARL called for deferential rather than de novo review, the Seventh Circuit concluded, the action was appellate in nature and could not be considered a "civil action" within the district court's "original jurisdiction." *Id.*

The Supreme Court granted certiorari to address "whether a case containing claims that local administrative action violates federal law, but also containing state law claims for on-the-record review of the administrative findings, is within the jurisdiction of federal district courts." *Id.* at 163. After concluding that the district

---

administrative agency" are given prima facie deference. *College of Surgeons*, 522 U.S. at 162 & n.2 (quoting 735 Ill. Comp. Stat., ch. 735, 5/3-110). However, facial constitutional challenges brought under the IARL are not bound to the record. *Id.*

court had original jurisdiction over both ICS's facial and as-applied constitutional claims under the federal question statute, the Supreme Court applied the supplemental jurisdiction statute.[10] Reaching the same conclusion as the district court—that the district court *could* assume supplemental jurisdiction over ICS's state law claims—the *College of Surgeons* majority pointed out that "[t]here is nothing in the text of 1367(a) that indicates an exception to supplemental jurisdiction for claims that require on-the-record review of a state or local administrative determination." *Id.* at 169. Instead, the Court noted, "the statute generally confers supplemental jurisdiction over 'all other claims' in the same case or controversy" as any claim the Court has "original jurisdiction" over under the federal question jurisdiction statute. *Id.*

The Supreme Court then turned to *Stude* and *Horton*. Lower courts had interpreted *Stude* and *Horton* as holding that state claims that require on-the-record, deferential review of state administrative decisions are appellate in nature and therefore fall outside the original jurisdiction of federal district courts. After a careful parsing of both cases, the Court rejected this reading, concluding that *Stude* and *Horton* actually "indicate that federal jurisdiction generally *encompasses* judicial

---

[10]    In relevant part, the supplemental jurisdiction statute provides that

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. 1367(a).

review of state administrative decisions."[11] *Id.* (emphasis added). The Court next pointed out that "district courts routinely conduct deferential review pursuant to their original jurisdiction over federal questions under 28 U.S.C. § 1331, including on-the-record review of federal administrative action." *Id.* at 171 (citing *Califano v. Sanders*, 430 U.S. 99, 106-07 (1977)).

As the *College of Surgeons* majority took pains to highlight, it was not called on to answer the question of whether an appeal of a state administrative action, "*if brought alone*, would substantiate the district courts' 'original' jurisdiction over diversity cases under § 1332." *College of Surgeons*, 522 U.S. at 172 (emphasis added). Chrysler contends that this case falls into that open question. But that argument leapfrogs the question *College of Surgeons* did answer—how to interpret the language of the *supplemental jurisdiction* statute, 28 U.S.C. § 1367(a), which makes no distinction between federal question jurisdiction, diversity jurisdiction, maritime jurisdiction, Indian claims jurisdiction, or any other type of "original jurisdiction." As the Supreme Court made clear in a subsequent case, *College of Surgeons'* interpretation of the supplemental jurisdiction statute applies with equal force in

---

[11]     Under *College of Surgeons'* reading of the case law, *Stude* stands only for the narrow proposition that where state proceedings are pending, a party may not " 'separate the question of damages and try it apart from the substantive right from which the claim for damages arose.' " *College of Surgeons*, 522 U.S. at 170 (quoting *Stude*, 346 U.S. at 582). This interpretation better accords with the fact that *Stude* specifically endorsed the concept that a defendant may remove an appeal of a state condemnation proceeding from state court to federal court. *Id.* And, as *College of Surgeons* also points out, *Horton* simply determined that a defendant *may* challenge a state administrative decision in federal district court under the diversity jurisdiction statute where state law calls for the decision to be reviewed by a trial *de novo*; *Horton* provided no authority on the issue of whether jurisdiction would be *lacking* over a claim involving deferential review. *College of Surgeons*, 522 U.S. at 170-71.

The Ninth Circuit, which had earlier read the case law in this area to prohibit cross-system review of state administrative decisions, commented that *College of Surgeons* "thoroughly dismantled . . . our . . . reading of *Stude* and *Horton*." *BNSF Ry. Co. v. O'Dea,* 572 F.3d 785 (9th Cir. 2009) (explicitly overturning *Shamrock Motors, Inc. v. Ford Motor Co.,* 120 F.3d 196, 197-200 (9th Cir. 1997)).

diversity cases. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 561-64 (2005) (discussing *College of Surgeons*). If even one claim falls under a district court's "original jurisdiction," whether under the federal question jurisdiction statute generally or the diversity jurisdiction statute, the supplemental jurisdiction statute allows the district court to hear other claims that are part of the same "case or controversy." *Id.* Here, Chrysler asserts that the declaratory judgment claim it brings in Case 136 falls within this Court's original jurisdiction under the diversity jurisdiction statute. Compl. ¶ 5 (Case 136, ECF No. 5). Chrysler does not explain why the supplemental jurisdiction statute would not permit it to add a 10 M.R.S. § 1189-B challenge to its declaratory judgment claim once the Board reaches a decision. 28 U.S.C. § 1367(a); *see also* Fed. R. Civ. P. 15(c) (providing that courts "should freely give leave" for parties to amend their complaints "when justice so requires").

Even if this case *did* directly implicate the question *College of Surgeons* left open—whether a state action requiring deferential review of a state administrative decision, standing alone, may be brought to federal district court under the diversity jurisdiction statute—the Court is not convinced that *Armistead v. C & M Transport, Inc.*, 49 F.3d 43 (1st Cir. 1995) supplies the answer, as Chrysler argues. There, the First Circuit commented that "federal district courts sitting in diversity jurisdiction do not have appellate power, nor the right to exercise supplementary equitable control over original proceedings in the state's administrative tribunals." *Id.* at 48. But Justice Ginsburg, in her dissent in *College of Surgeons*, opined that the majority's

reasoning "overrides" this passage from *Armistead*. *College of Surgeons*, 522 U.S. at

178 (Ginsburg, J., dissenting). She predicted a different answer:

> If, as the Court reasons today, the distinction between *de novo* and
> deferential review is inconsequential, then a district court may, indeed
> must, entertain cross-system, on-the-record appeals from local agency
> decisions—without regard to the presence or absence of any federal
> question—whenever the parties meet the diversity-of-citizenship
> requirement of § 1332.

*Id* at 182. The only appellate court to address the issue in the interim agreed with

Justice Ginsburg's analysis. *See BNSF*, 572 F.3d at 790-91 (diversity jurisdiction

statute allows federal district courts to conduct on-the-record, deferential review of

state administrative decisions). In any event, none of *Armistead*'s actual holdings

depend on the portions of the decision Chrysler quotes.[12] Given the unsettled state of

this area of law, Chrysler's citation to pre-*College of Surgeons* dicta does not persuade

the Court.

Finally, Chrysler argues that the *Rooker-Feldman* doctrine would bar this

Court from hearing a 10 M.R.S. § 1189-B challenge of a Board decision. *Rooker* and

---

[12]     In *Armistead*, a worker who had already obtained a Maine Workers' Compensation
Commission judgment filed a petition for enforcement in Maine's Superior Court; only then did his
employer's insurer attempt to remove the case to federal district court. *Armistead*, 49 F.3d at 47.
Notably, the statutory structure of Maine's workers' compensation system provided Maine's judiciary
only a highly circumscribed role in adjudicating worker's compensation claims, vesting Maine's
Superior Court with "equitable powers to enforce Commission orders and to issue *pro forma* decisions
enforcing Commission benefit awards," but no power to find or even review facts. 39 M.R.S.A. §§ 99,
103-B, 103-C, 103-E (1989) (repealed 1993).

     The First Circuit ordered the district court to remand the case to Maine's Superior Court,
*Armistead*, 49 F.3d at 47-48, straightforwardly applying the *Turnbull-Barrow* doctrine, which
prevents parties from removing "auxiliary" suits to enforce or nullify judgments as if they were
"independent and separate" actions. *First Nat. Bank v. Turnbull & Co.*, 83 U.S. 190, 193 (1872)
(remanding suit to enforce prior judgment); *see also Barrow v. Hunton*, 99 U.S. 80 (1878) (remanding
suit to declare prior judgment null). The First Circuit was not called on to decide the issue this Court
would face if a party brought a 10 M.R.S. § 1189-B action to federal district court.

*Feldman* interpreted the reach of the federal question jurisdiction statute in light of another jurisdictional statute, 28 U.S.C. § 1257(a), which provides the Supreme Court jurisdiction to review "[f]inal judgments or decrees" on federal questions "rendered by the highest court of a State in which a decision could be had." *See D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 483 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). The *Rooker-Feldman* doctrine provides that Congress intended to allow only the Supreme Court to review such cases, not lower federal courts. *Feldman*, 460 U.S. at 483. Accordingly, the federal question statute should not be read to allow federal district courts to review "final judgments of a state court in judicial proceedings" which could instead proceed through the state appellate courts and then be brought to the United States Supreme Court. *Id.* Among other distinctions, Case 208 involves no federal question within the ambit of 28 U.S.C. § 1257(a). The *Rooker-Feldman* doctrine therefore has no logical application here. Based on the foregoing, none of Chrysler's arguments[13] convince the Court that its right to a federal forum would be vitiated if the Board is allowed to proceed with Case 208.[14]

---

[13] The Court easily dispatches an additional argument made by Chrysler—that Case 208 could not be brought directly to federal court after a Board decision because, read literally, Maine law provides that challenges to Board orders be taken to the Superior Court. *See* 10 M.R.S. § 1189-B(2) ("A party to a decision by the board may appeal *to the Superior Court* . . . .") (emphasis added). If this position were correct, it would foreclose almost every diversity case and pendant state claim this Court hears, as the Maine statute defining the Superior Court's jurisdiction provides that it has "*exclusive* jurisdiction" over most civil cases arising under Maine law. 4 M.R.S. § 105(1)-(2); *see also* 2 Charles Harvey, *Maine Civil Practice* § 12 (2013-14 ed.) (describing Maine Superior Court's jurisdiction).

[14] The parties have not briefed, and the Court does not consider, the effect abstention statutes and doctrines might have if Chrysler were to attempt to bring Case 208 before this Court at a later date. The Court merely notes that the relevant statutes and doctrines have their own unique tests to balance state and federal interests. *See* 28 U.S.C. § 1367(c); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

### ii. The Federal Interest in Interstate Commerce, Enforcement of Contracts, and Due Process

Though Chrysler's briefing nods in the direction of a federal interest in interstate commerce and the enforcement of contracts, Chrysler makes no argument that the Dealers Act violates the Commerce Clause, the Contract Clause, or the Supremacy Clause. Nor does Chrysler directly argue that the Board's composition violates principles of due process, despite innuendo in that direction. In fact, this District has previously rejected such concerns as "unwarranted." *Alliance of Auto. Mfrs. v. Gwadosky*, 353 F. Supp. 2d 97, 108 (D. Me. 2005). In any case, parties should generally bring challenges based on specific constitutional provisions directly rather than bringing them around to the back door for a removal analysis with a more soft-focus review.

### iii. The Federal Interest in Principles of Federalism

Finally, there is a federal interest in upholding principles of federalism, which counsels against applying diversity jurisdiction in a way that would override valid policy calculations made by state actors. *See* U.S. Const. amend. X; *Erie R.R. v. Tompkins*, 276 U.S. 518 (1928). In this case, it appears that allowing removal would essentially gut the portions of the Dealers Act that allow either party to bring a Dealers Act case before the Board unilaterally. Any out-of-state manufacturer (which in Maine, means essentially *all* car manufacturers) facing a Dealers Act claim could simply remove the case and evade the Board entirely.

Based on the above application of the *Volkswagen de Puerto Rico* test, where the first prong factors are in equipoise and the second prong factors lean strongly

toward the State's interests in allowing the Board to hear Case 208, the Court concludes that the Board would not be acting as a "State court" if it hears Darling's complaint for civil penalties in Case 208. *See* 28 U.S.C. § 1441(a). Accordingly, 28 U.S.C. § 1441 does not provide a basis for removal at this juncture. The Court must therefore remand Case 208 to the Maine Franchise Board.

## DISCUSSION OF MOTION TO STAY IN CASE 136

The resolution of Darling's motion for remand compels the resolution of Darling's motion to stay Case 136. Whether or not this Court is obligated to follow a state law purporting to require it to halt its proceedings, an issue the parties have not briefed, the Court clearly possesses inherent power to order a stay for prudential reasons. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004). The pendency of parallel proceedings provide such a reason. *Landis*, 299 U.S. at 254; *Microfinancial*, 385 F.3d at 77.

Here, interests of comity and judicial efficiency militate strongly in favor of staying Case 136 until the Maine Franchise Board has heard Case 208 and issued a decision. The Court relies on the parties to provide the Court notice of the Board's disposition.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Darling's motion to remand *Darling's v. Chrysler Group, LLC*, 1:14-cv-00208-NT to the Maine Motor Vehicle Franchise Board, **GRANTS** Darling's motion to stay *Chrysler Group, LLC v.*

*Darling's*, 1:14-cv-00136-NT, and **ORDERS** the parties to provide updates to the Court every six months during the pendency of the stay and to notify the Court promptly when the Board reaches its decision.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 30th day of October, 2014.